In the Matter of CHARLES P. PIPER, Petitioner, against ISADOR LUBIN, as Industrial Commissioner of the State of New York, Respondent.— Proceeding under article 78 of the Civil Practice Act, transferred to this court by order of the Supreme Court, Special Term, Albany County, to review a determination of the Industrial Commissioner whereby petitioner was removed from his position as upstate supervising apprentice training representative in the Department of Labor, pursuant to the procedure prescribed by section 22 of the Civil Service Law. The Department of Civil Service specifications provide that the holder of this position "supervises field activities of the Apprenticeship Council in the Metropolitan or Upstate Area; reviews apprenticeship standards developed by subordinates for operational feasibility; plans the number and boundaries of districts and the location of area and local offices and allocates staff to these offices; reviews progress of work within the State by conferences with district supervisors and by examination of reports; personally develops apprenticeship systems covering the entire State; delivers speeches and makes personal appearances to stimulate interest and cooperation in the Council's program". The charge against petitioner, a veteran, was that he had "failed to supervise adequately the activities of the upstate district offices of the Bureau of Apprentice Training in the Department of Labor". He was found guilty of this charge and of 11 of the 13 specifications thereof. Petitioner had supervision of six up-State offices. In addition, pursuant to a practice antedating his incumbency of the position, petitioner acted as assistant to his superior, the administrator of apprentice training, in the latter's office at Albany and was unquestionably burdened with rather broad administrative tasks as well as with time-consuming details of office management, none of which were contemplated when his position was created or by the civil service specifications above quoted. Two of the specifications served in amplification of the charge alleged petitioner's failure at any time in 1955 to make inspection calls at the Binghamton and Utica offices or to conduct training meetings at the Binghamton and Buffalo offices. Petitioner admitted these failures but denied that any unfavorable inferences could be drawn therefrom. The first duty stated in the Department of Civil Service specifications above quoted was the supervision of "field activities of the Apprenticeship Council" and we find reasonable the Industrial Commissioner's determination that personal

visitation and inspection were contemplated and were in this case necessary. The effects of petitioner's omissions in these respects may be considered in connection with certain other specifications of the charge. There was testimony that no training meetings were held in two offices and the commissioner urges with reason that it was petitioner's duty, if not to conduct them, at least to direct that they be held by the local supervisors. Additional specifications related to petitioner's failure to enforce compliance by the area offices with directives as to certain records and as to certain filing and statistical procedures; others to his failure to prevent superflous promotional calls; and additional specifications charged petitioner, in three instances, with permitting local offices to carry inaccurate records as to apprentices in training, with failure to advise two offices "where to center their promotional activities" and with permitting field men to visit apprentice training classes of which the Department of Education had charge. To certain of these specifications petitioner entered a specific or qualified denial but, in most cases, his answer was that in no case did he permit any of the acts or omissions charged "when the matter came properly to my attention". It seem unlikely that his subordinates would call their own errors to his attention but it is not clear that personal inspection of these offices, unless in the form of a complete and detailed audit, repeated at intervals, would have revealed many of the omissions and irregularities which existed. The core of the charges preferred seems to be the contention that certain omissions and irregularities in two area offices, for the management of which the district representatives, rather than petitioner, were primarily responsible, would not have occurred had petitioner exercised closer supervision, principally by way of inspection visits, and that his omissions in that respect, even with the acquiescence of his superior, constituted grave misconduct, or evidenced a lack of recognition of responsibility so great as legitimately to infer incompetency warranting dismissal, and this despite the mitigating effect of the uncontradicted evidence of the additional work load carried by petitioner as at least the *de facto* assistant, and, on occasion, acting State administrator. Upon the record, the commissioner was justified in finding dereliction warranting some measure of punishment. In many cases proven acts or omissions are inherently of such nature as immediately to infer grave misconduct or definite incompetency. This is not such a case. Here, some factual evaluation was required. The matter of punishment to be passed upon by us, pursuant to the authority lately conferred (Civ. Prac. Act, § 1296, subd. 5-a) cannot be reviewed without at least an expression of conclusions and reasons and a record of factual content sufficient to support them, since the inherent nature of the offenses does not necessarily demand such stringent punishment. (See *Matter of Stolz* v. *Board of Regents*, 4 A D 2d 361.) The decision here, while failing to adopt the inferences and conclusions appearing in the hearing officer's report, made none in their stead beyond a finding of guilt and the categorical and equivocal finding that the "charges and specifications * * * constitute incompetency *or* misconduct *or* both". (Emphasis supplied.) Thus we are unable to ascertain whether it was intended, despite petitioner's considerable experience and good record, to find such incompetency as rendered him unfit to perform the duties of the position, or whether the basis of the penalty of dismissal was a finding of misconduct, without factual evaluation of its gravity or effects, so great as to warrant dismissal. Petitioner was entitled to specific findings in these respects and such are necessary to an intelligent review. (*Matter of Elite Dairy Prods.* v. *Ten Eyck*, 271 N. Y. 488.) Determination annulled and matter remitted to the Industrial Commissioner for further proceedings not inconsistent herewith, without costs. Foster, P. J., Bergan, Halpern and Gibson, JJ., concur.